# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**COREY D. STEWARD**　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**
**ADC #122825**

v.　　　　　　　　　　No: 2:19-cv-00030 JM-PSH

**TIFFANY SIMS,** *et al.*　　　　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Corey Duran Steward, an Arkansas Division of Correction (ADC) inmate, filed a complaint pursuant to 42 U.S.C. § 1983 on March 14, 2019, seeking compensatory and punitive damages (Doc. No. 2). Steward later filed an addendum clarifying that he was asserting claims under the Eighth and Fourteenth Amendments

to the United States Constitution (Doc. No. 10). Steward initially sued Officer Tiffany Sims, ADC Director Wendy Kelley, Warden Jeremy Andrews, Chief of Security David Knott, and an unknown correctional officer in their individual capacities. Doc. No. 2 at 1-2. The unknown officer was later identified as Erick Hinton. Doc. Nos. 32-33. Steward's claims against Kelley, Andrews, and Knott and his Fourteenth Amendment due process claims were subsequently dismissed. *See* Doc. Nos. 30 & 38. Steward's Eighth Amendment claims against Hinton have been dismissed for failure to exhaust administrative remedies. Doc. Nos. 58 & 62.

Steward's only remaining claim is that Sims violated his constitutional rights by failing to protect him from a fellow inmate who broke free from his recreational pen and stabbed Steward in the head with a knife at the ADC's East Arkansas Regional Unit on May 30, 2017.[1] Doc. No. 2 at 4. Steward alleges that Sims was aware that the other inmate had a knife and that the other inmate intended to harm him. *Id.* Following the attack, Steward was transported to the Forrest City Hospital where he received staples in his head and pain medication to treat his injuries. *Id.*

Before the Court is a motion for summary judgment, a brief in support, and a statement of facts filed by Sims (Doc. Nos. 91-93). Steward filed an untimely response, a supplemental response, a declaration in support, and a response to Sims'

---

[1] Steward is currently incarcerated at the ADC's Varner Supermax Unit. Doc. No. 2.

2

statement of facts (Doc. Nos. 98-101). The Court ordered Sims to submit a copy of the video recording of the May 30, 2017 incident, and she did so. *See* Doc. Nos. 102-104 & 110. For the reasons described below, the undersigned recommends that Sims' motion for summary judgment be denied in part and granted in part.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials . . .". Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Facts[2]

1.     On May 30, 2017, at approximately 11:20 a.m., Officers Tiffany Sims and Erick Hinton were assisting with escorting inmates from the north recreational yard call when Steward was attacked by Inmate Anthony Quick.  Doc. No. 91-4, *Declaration of Tiffany Sims*, at ¶¶4, 8; Doc. No. 91-5, *Declaration of Erick Hinton,* at ¶¶4, 9; Doc. No. 91-6, *Declaration of Amanda Granger,* at ¶¶ 3-6.

---

[2] The facts are taken from those submitted by Sims which are supported by documents attached to her motion for summary judgment (Doc. Nos. 91-1 – 91-9), the deposition testimony of Corey Steward (Doc. No. 96-1), and the video recording of the May 30, 2017 attack (Doc. No. 110).  Facts disputed by Steward are noted.  Doc. No. 101.

2. During recreational yard call, the inmates are placed in individual pens made of chain-link fencing. Doc. No. 91-4 at ¶5; Doc. No. 91-5 at ¶5. Inmates are searched prior to being placed in the recreational yard pens. *Id*. The individual pens are secured by gates that are locked during recreation time. Doc. No. 91-4 at ¶7; Doc. No. 91-5 at ¶8.

3. According to Lieutenant Amanda Granger, ADC Officers conducted an inspection of the north yard recreational pens prior to inmates being placed in them on May 30, 2017. Doc. No. 91-6 at ¶10. All pens on the north yard, except pen #15, were in good condition and were used to conduct yard call.[3] *Id*.

4. Sims and Hinton were not charged with inspecting the recreational pens prior to inmates being escorted out to the recreational yard on the date of the attack. Doc. No. 91-4 at ¶4; Doc. No. 91-5 at ¶4. Additionally, Sims and Hinton did not escort Steward or Quick to the recreational yard on that date. *Id.*; Doc. No. 96-1, *Deposition Testimony of Corey Steward,* at 18.

---

[3] Steward questions whether the pens were inspected before yard call since Quick was able to cut a hole in his pen and escape it before attacking Steward. Doc. No. 101 at 3. However, there is no claim before the Court that the pen in which Quick was placed had not been adequately inspected. Whether the pen was inspected is not a material question of fact. What is material is that Quick was able to escape from the pen, a fact that is undisputed by both parties.

5. Quick and Steward were placed in separate pens on May 30, 2017. Doc. No. 96-1 at 16. Quick was in pen #16, Doc. No. 91-6 at 2, three pens down from Steward. *Id.* at 32-33.

6. Sims and Hinton were assigned to escort Steward from the recreational yard. Doc. No. 91-4 at ¶6; Doc. No. 91-5 at ¶6.

7. Sims unlocked Steward's gate and opened it to remove him from his pen after Hinton handcuffed Steward. Doc. No. 91-4 at ¶7; Doc. No. 91-5 at ¶8. According to Hinton, Steward asked him to not put the handcuffs on tight, but would not tell him why he made that request. Doc. No. 91-5 at ¶7. Steward maintains that he told Sims and Hinton he did not want to be handcuffed too tightly because Quick had cut a hole in the fence and threatened to kill him. Doc. No. 101 at 4-5.

8. According to Sims and Hinton, Quick "came out of nowhere" as Sims opened the gate to Steward's pen, and pushed past them to attack Steward. Doc. No. 91-4 at ¶8; Doc. No. 91-5 at ¶9. Steward disputes that Quick surprised Sims and Hinton; he claims that Sims and Hinton were "looking right at the inmate Quick running towards them and simply moved out of the way to allow inmate Quick into my cage with the knife." Doc. No. 101 at 6. Steward claims that Sims and Hinton had the opportunity to prevent the attack because Quick stopped in front of them before running into his pen. *Id.* at 9-10. He argues Sims and Hinton could have "taken [Quick] down" at that time. *Id.* He also argues that Sims and Hinton could

also have sprayed Quick with pepper spray as he chased Steward around the pen.

*Id.*

     9.     Regarding the attack, Steward testified:

     . . . I was taken to the recreation yard; and a inmate, Anthony Quick, which he was housed in a recreation cage, possibly two, three cells down from me. We was arguing. You know, we had – it been a little animosity between the two of us.

     Ms. Sims was present. She was the officer conducting yard call that day. Well, conducting security that day.

     And the inmate had tore out of his cage. So when the officer approached my cage to place me in handcuffs, I advised Ms. Sims and [Erick Hinton], advised them both that the Inmate Quick had tore out of his recreation cage.

     He had a knife and he threatened to kill me. Which, Ms. Sims, she was present the whole time; so she heard us arguing the whole time we was on the yard.

     I told her, I advised her, I said, "This inmate has a knife. He says he's going to kill me."

     She stated to me everything was on camera. She placed – she gave me a direct order to catch the handcuff. She placed me in the handcuffs.

     And the inmate he counter – counter – well, I don't know – well, counter-clockwise, he – he knew exactly what – he timed everything. It was perfect, you know what I'm saying? From the time she opened the – unlocked the cage, he was already out of the cage on the way to come stab me.

     And she – you know, she didn't do anything to stop it. She got – she actually got – moved out the way and allowed him to enter into my cage. He chased me around in my cage, and he was able to stab me.

7

Doc. No. 96-1 at 16-17.

10.  Sims and Hinton claim they were not aware that Quick was able to get out of his pen, and were not aware that Quick was out of his pen and running towards their location.  Doc. No. 91-4 at ¶9; Doc. No. 91-5 at ¶10.

11.  Video footage of the May 30, 2017 incident was submitted by Sims, and verified as authentic by Davonda Robinson, a Sergeant at the ADC's EARU. Doc. Nos. 110-1 – 110-2; Doc. No. 104 (flash drive on file in the clerk's office).  It shows a grouping of recreational pens, some of which held individual inmates.  Two officers, presumably Sims and Hinton, are seen at the gate to Steward's pen.  They open the gate to his pen at 11:15:55 and bring him out in handcuffs.  Although the video is somewhat blurry, it shows that Quick exited a pen several pens away from Steward at 11:15:52, three seconds before Steward is brought out of the pen.  Quick can be seen running down a pathway between the recreation pens beginning at 11:15:53.  Just as Steward was brought out of his pen at 11:15:55, Quick rushed between the guards, pushing Steward back into the pen at 11:15:57.  Steward ran from Quick in the pen, attempting to avoid him. During the five seconds that Quick was attacking Steward, he stabbed Steward.  Steward was back out of the pen by 11:16:02.  A viewing of the video establishes that Quick did not stop in front of Sims or Hinton before attacking Steward.

12. After the attack, Sims called all rover officers to the recreational yard to assist with the situation. Doc. No. 91-4 at ¶10; Doc. No. 91-5 at ¶11.

13. Lieutenant Amanda Granger responded to an emergency call made by Sims for assistance on the north yard on May 30, 2017, at approximately 11:20 a.m. Doc. No. 91-6 at ¶3.

14. After additional officers arrived, Steward was taken to the unit's infirmary for an examination by the Unit's medical staff. Doc. No. 91-4 at ¶12; Doc. No. 91-5 at ¶13.

15. Steward was then taken on an emergency gate pass by ambulance to Forrest City Medical Center. Doc. No. 91-6 at ¶6. According to Granger, Steward did not receive any life-threatening injuries and was returned to the unit later in the day.[4] *Id*.

16. Granger investigated the May 30, 2017 attack on Steward. Doc. No. 91-6 at ¶8. She concluded that Quick was in the north yard pen #16 where he manipulated an area of the chain-link fencing and broke several pieces of the fence wire off allowing him to exit and attack Steward. Doc. No. 91-6 at ¶7.

---

[4] Steward disputes that his injuries were not life-threatening. Doc. No. 101 at 8. However, the extent of his injuries are not material to the liability determination in this case. Steward does not dispute that he was returned to the unit later the same day.

17. Steward testified that while there was some animosity between him and Quick before the attack, he did not request that Quick be placed on his enemy alert list. Doc. No. 96-1 at 16-24. In his deposition testimony and his response to Sims' motion for summary judgment, Steward claims that he asked security staff to move him to another cell block away from Quick before the incident on May 30, 2017, but they did not do so. Doc. No. 96-1 at 22-23; Doc. No. 101 at 11. He states they should have put Quick on Steward's enemy alert list based on his request to be moved. *Id.*

18. Sims and Hinton claim they were not aware of any problems between Steward and Quick prior to the May 30 attack. Doc. No. 91-4 at ¶13; Doc. No. 91-5 at ¶14.

19. Steward admitted he did not make Sims aware of any prior incidents between him and Quick. Doc. No. 96-1 at 28-31. He believes she could hear them arguing during recreation the day of the attack. *Id.*

20. Sims denies that she heard Quick make any threats towards Steward as she and Hinton were preparing to remove Steward from his pen. Doc. No. 91-4 at ¶16. She also denies that Steward notified her that Quick was able to get out of his pen or that Quick was going to attack him prior to removing him from the pen on the recreational yard. Doc. No. 91-4 at ¶15.

21.     Steward claims he told Sims while he was being handcuffed that Quick had cut a hole in the fence and threatened to kill him.  Doc. No. 101 at 4 & 10-12; Doc. No. 96-1 at 16.[5]  *Id.* at 4.

22.     On May 3, 2018, Steward filed a complaint with the Arkansas State Claims Commission with regard to the May 30, 2017 attack by Quick.  Doc. No. 2 at 2-3; Doc. No. 91-1, *Arkansas Claims Commission Complaint*.

23.     On September 17, 2018, the Claims Commission issued an Order granting ADC's motion to dismiss.  Doc. No. 91-2, *Order*.  The Claims Commission agreed with ADC that Steward had not established negligence because he failed to show how the ADC knew that his attacker was a danger to him and, therefore, did not breach its duty to Steward.  *Id*.  The Claims Commission subsequently denied Steward's motion for reconsideration.  Doc. No. 91-3, *Order on Claimant's Motion for Reconsideration.*

---

[5] Steward asserts that a response he received to grievance EAM17-01370 corroborates his claim that he warned Sims he would be attacked.  Doc. No. 101 at 10-12.  The response to that grievance stated: "[Officer Sims] advised that she did not have knowledge of you being threatened by another inmate. She states you informed another Officer who in turn advised the Lieutenant of the situation, but that she was not aware of it until Lieutenant was talking to the other officer about it."  Doc. No. 49-3 at 11.  This grievance response does not indicate when Sims learned that Steward had been threatened by another inmate, just that she learned of it from another officer, possibly after the attack.

## IV. Analysis

### A. *Res Judicata*

Sims argues that Steward's claims are barred by *res judicata* (also called claim preclusion) because he filed a claim based on the same set of facts with the Arkansas Claims Commission (the "Commission").[6] The principles of *res judicata* bar a claim if four elements are established: (1) the first suit resulted in a final judgment on the merits; (2) if the first suit was based upon proper jurisdiction; (3) if both suits involved the same parties or those in privity with them; and (4) if both suits are based upon the same claims or causes of action. *In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997).

---

[6] The Eighth Circuit Court of Appeals has described claim and issue preclusion as follows:

> The binding effect of a former adjudication, often generically termed res judicata, can take one of two forms. Claim preclusion (traditionally termed res judicata or "merger and bar") "'bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.'" *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 517 (8th Cir.1995) (quoting *Smith v. Updegraff,* 744 F.2d 1354, 1362 (8th Cir.1984)). Issue preclusion (or "collateral estoppel") applies to legal or factual issues "actually and necessarily determined," with such a determination becoming "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

*In re Anderberg-Lund Printing Co.*, 109 F.3d 1343, 1346 (8th Cir. 1997).

The Eighth Circuit Court of Appeals has held that an inmate's deliberate-indifference claim is not precluded by a prior action for negligence before the Claims Commission. *Smith v. Johnson,* 779 F.3d 867 (8th Cir. 2015). In *Smith,* the inmate asserted a claim with the Arkansas Claims Commission and later filed a § 1983 action for deliberate indifference based on the same events. The Court of Appeals held that *res judicata* did not bar the inmate's § 1983 action because the Commission did not have jurisdiction to address a constitutional claim against the defendant in his individual capacity. 779 F.3d at 870. Rather, the Commission had jurisdiction to dispose of the inmate's claim against the State. *Id.*

The Eighth Circuit also held in *Smith* that issue preclusion did not bar the inmate's § 1983 action because it did not involve the same issue that was presented to the Commission. *Id.* at 871. "To invoke issue preclusion [ ] a defendant must establish not only that a claim arises from the same facts, but that the *same issue* was decided in the prior proceeding." *Id.* (emphasis in original). Because the inmate plaintiff in *Smith* asserted only a negligence claim before the Claims Commission, he was not precluded from bringing a deliberate indifference claim in a §1983 lawsuit. *Id.* The same reasoning applies to this case.

Here, Steward filed a complaint before the Claims Commission describing the same factual allegations as those alleged in this lawsuit. Doc. No. 91-1 at 1. His claim for relief stated:

13

> This claim is for (failure to follow policy) for failure to protect claimant from assault by another I/M while in the sole custody and care of state staff which lead to (personal injury), (Negligence) for the injuries claimant received while in care of state staff. Failure to follow policy), (Personal Injury), and (Negligence) is the claim (RELIEF) sought $50,000.

*Id.* Although Steward alleged that Sims and other prison staff failed to protect him, he did not specifically raise the issue of whether Sims was deliberately indifferent to his safety in violation of the Eighth Amendment.[7] Further, the Commission only decided the issue of whether Steward had pled enough facts to show that the State was negligent. *See* Doc. No. 91-2 at 1-2. Because the Commission did not decide the same issue presented in this case and it did not have jurisdiction over Steward's individual claim against Sims, neither *res judicata* nor issue preclusion bars Steward's Eighth Amendment claim against Sims.

---

[7] The Eighth Circuit explained in *Smith*:

> The order of the Commission determined only that Smith failed to prove "any *negligence* on the part of the [Department of Correction]." App. 89 (emphasis added). Smith's present claims are that Johnson individually was *deliberately indifferent* to his safety in the prison and *intentionally* cruelly and unusually punished him for the altercation, in violation of the Eighth Amendment. *See Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). One claim involves alleged criminal recklessness, where the defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw the inference," *id.;* the other involves alleged intentional wrongdoing.

779 F.3d 867, 871 (8th Cir. 2015) (emphasis in original).

## B.     *Qualified Immunity*

Officer Sims also argues that she is entitled to qualified immunity because Steward cannot establish that she violated his constitutional rights. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An inmate has a constitutional right to be free from attacks by other inmates. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). A correctional officer is

liable for failing to protect an inmate if the inmate can make the following two-part showing:

> A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Jones v. Wallace*, 641 Fed. Appx. 665, 666 (8th Cir. 2016). The Eighth Circuit Court of Appeals has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Curry v. Crist*, 226 F.3d at 979; *Jackson v. Everett*, 140 F.3d at 1151; *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

Steward fails to create a disputed issue of material fact. Sims states that she was unaware that Quick had broken out of his pen in order to escape and attack Steward until Quick attacked "out of nowhere." The video of the attack corroborates Sims' statement, and establishes that Quick's escape and attack happened in a matter of seconds, and Sims had very little, if any, time to react.

It is undisputed that Sims was not the officer who inspected the north yard recreational pens on May 30, 2017. Further, according to the declaration of Lieutenant Granger, all pens were inspected that day, and all but one (#15) was in good condition at the beginning of yard call. Granger's investigation of the May 30 incident revealed that Quick had manipulated a part of the chain-link fencing on pen #16, allowing him to exit. There is no evidence Sims witnessed or became aware of the manipulations to the fencing on Quick's pen until immediately before or at the time he escaped the pen.

Additionally, there is no evidence that Sims was aware that Quick was likely to attack Steward until immediately before the attack happened. Steward acknowledged that Quick was not on his enemy alert list and that Sims would have no reason to know of any animosity between him and Quick.[8] Steward testified that he believed Sims could hear him arguing with Quick during recreation time on the date of the attack. Whether Sims could have overheard Steward and Quick arguing during recreation call is not relevant. What is relevant is that there is no evidence before the Court that Sims **did** hear any argument between Steward and Quick, or

---

[8] To the extent Steward claims that Quick should have been added to his enemy alert list based on his request to be moved to another cellblock away from Quick, that is not relevant to his claims against Sims in this case. There is no evidence Sims had knowledge of any request by Steward to change cellblocks.

that if Sims heard any argument, she would have been put on notice of an imminent escape and attack on Steward.

Furthermore, any dispute regarding whether or not Steward warned Sims that he was about to be attacked just before the attack is immaterial to the outcome of this case. Steward testified that he told Sims and Hinton that Quick had escaped his pen and threatened to kill him **while she and Hinton were removing Steward from his pen**. Both Sims and Hinton deny Steward told them this; but even if he did, the report of such an escape and attack happened unexpectedly and simultaneously to Steward's removal from his pen. There is no evidence Sims was aware that Quick had actually escaped his pen and was about to attack Steward in advance of Steward's removal. In the video of the incident, Quick is seen running down the hallway next to the pens just two seconds before Steward is taken out of the pen. The video clearly establishes that the attack on Steward was a surprise. Sims was not deliberately indifferent to a substantial risk that Quick would escape his pen and attack Steward.

Finally, Steward's claim that Sims should have intervened to prevent the attack on Steward fails to describe a constitutional violation. While it is true that Sims and Hinton did not enter the pen with Quick, Quick and Steward were only in the pen together for a total of five seconds. There was hardly time to intervene before

Steward was able to back out of the pen away from Quick.[9] In these circumstances, Sims' actions do not demonstrate deliberate indifference.

## V. Conclusion

The undersigned recommends that Officer Sims' motion for summary judgment be denied in part and granted in part. Steward's claims are not barred by *res judicata*; however, the undisputed material facts show that Sims was not aware of a substantial risk to Steward and therefore was not deliberately indifferent to such a risk. Accordingly, Steward's complaint should be dismissed with prejudice, and any other pending motions be denied as moot.

DATED this 11th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] The Eighth Circuit Court of Appeals has held that "unarmed prison officials have no duty as a matter of law to physically intervene in a prison fight which may cause them serious injury or worsen the situation, . . ." *See Arnold v. Jones*, 891 F.2d 1370, 1372 (8th Cir. 1989); *see also Lewis v. Varner Unit*, No. 5:18CV00221-JM-JJV, 2019 WL 3001313, at *4 (E.D. Ark. June 18, 2019), *report and recommendation adopted,* No. 5:18CV00221-JM-JJV, 2019 WL 2998738 (E.D. Ark. July 9, 2019). In this case, there is no evidence regarding whether or not Sims was unarmed or could intervene in a safe manner. Nevertheless, the video shows that there was simply not enough time to react to the surprise attack before it was over.